|  |  |
|---|---|
| ERIC WRIGHT,<br><br>           Plaintiff,<br><br>     v.<br><br>MARTIN, HARDING, AND MAZZOTTI, LLP<br>and CASSANDRA ANNE KAZUKENUS, ESQ.,<br>individually,<br><br>           Defendants. | Civil Case No.: 1:22-cv-515<br><br>CIVIL COMPLAINT (MAD/ML)<br>PURSUANT TO<br>TITLE VII OF THE<br>CIVIL WRIGHT'S ACT,<br>AS AMENDED |



## JURISDICTION

1. Jurisdiction is afforded this court under 42 U.S.C. § 2000e-5.

## PARTIES

2. Plaintiff, Eric Wright ("Mr. Wright"), in proper person, files this complaint against Defendants, Martin, Harding, and Mazzotti, LLP ("MHM" or the "Firm") and Cassandra Anne Kazukenus, Esq., individually ("Ms. Kazukenus"), and alleges as follows:

3. This action is brought under: Title VII of the Civil Right's Act of 1964, as amended, codified at 42 U.S.C. § 2000e *et seq.*, and the Civil Right's Act of 1991, for employment discriminationbased on race, color, religion, sex, age, or national origin.

## VENUE

4. Venue is invoked under 28 U.S.C. s 1391.

5. The plaintiff is an employee under 42 U.S.C. § 2000e(f).

6. The defendants are an employer, employment agency, managerial, governing or labor organization under 42 U.S.C. § 2000e(b), (c), or (d).

7. The defendants are engaged in commerce under 42 U.S.C. § 2000e(g).

## INTRODUCTION

8.      Defendants MHM and Ms. Kazukenus have targeted, harassed, humiliated and effectively ended the meaningful employment of Mr. Wright, a Black African-American man who was removed from his law clerk job at MHM, in retaliation for his protected speech, complaints on the lack of diversity, discrimination, disparate, systemic racism and, more broadly, his support of Black Lives Matter protest around the world.

## PERFECT HIGH SCHOOL STORY

9.      Mr. Wright moved to New York City to start a new life. Before moving, in 1996 he graduated 10th in his high school class, was a star athlete and married the girl voted prettiest in high school. Above are cap and gown pictures of Mr. Wright and his soon to be wife in the school year book senior year.




10.     The school Mr. Wright graduated from was in the poverty stricken area known as the 9th ward. Despite the circumstances Mr. Wright make the best of the opportunity. He was very popular in high school. They voted him senior class president and captain of the football team. Below are pictures of Mr. Wright.





11. There were no dreams of playing college football for Mr. Wright, after highschool he had fathered a little girl and had a full-time job working providing for his soon to be wife who he was sharing an apartment with while they both went to college.

## THE AMERICAN DREAM

12. Both Mr. Wright and his high school girlfriend both graduated from the same college four years later and after college, the two got married. On May 25t,h 2001, in the presence of hundreds of peopl,e Mr. Wright married his high school girlfriend and not long after was accepted into law school. In addition, the couple Would shorter words add punch?<linebreak/><linebreak/><b>Example</b> from Justice Cardozo: "Plaintiff was standing





on a platform on defendant's railroad after <b>buying</b> a ticket to go to Rockaway Beach."<linebreak/><linebreak/><b>Example</b> from Lord Denning: "The newcomer <b>bought</b> one of the houses on the edge of the cricket ground."<linebreak/><linebreak/><b>Example</b> from Kannon Shanmugam: "[He] had <b>bought</b> the bond . . . for 79-16—meaning that . . . ." first home a duplex with rental income that would come in handy.

13. It was in law school the couple began having a family of their own. The had first child

was born in 2003 and then another child every two years later three in total. Above are pictures of the entire family at the 20th-year class reunion.

## PROMISING FUTURE

14.     Mr. Wright convinced his wife in the midst of having babies to start law school; they also



*Joint JD and MPA Graduates-from left: T. Dowell, T. Boudy, A. Bailey, and S. Varnado*

Would shorter words add punch?<linebreak/><linebreak/><b>Example</b> from Justice Cardozo: "Plaintiff was standing on a platform on defendant's railroad after <b>buying</b> a ticket to go to Rockaway Beach."<linebreak/><linebreak/><b>Example</b> from Lord Denning: "The newcomer <b>bought</b> one of the houses on the edge of the cricket ground."<linebreak/><linebreak/><b>Example</b> from Kannon Shanmugam: "[He] had <b>bought</b> the bond . . . for 79-16—meaning that . . . ." second home. With three babies and with law school, studying and preparing for the bar funds were minimal. Ms. Wright finished law school in 2006 receiving a joint law degree and master's in public administration. Below is a picture.

## THE STORM

15.     Late August 2005 the world changed when category five winds hit the coast of Gulfport MS and South Louisiana. Mr. Wright's entire's family what's affected by the storm. Because of the storm, Mr. Wright no longer has a single cap and gown picture.

16.     Mr. Wright took in 20 family members and friends into his home for several. A story was done aired on PBS news hour with Jim Lehrer. See, below.[1]

---

[1] https://www.pbs.org/newshour/show/families-struggle-in-louisiana



17.     The storm especially distroyed Mr. Wright's rental properties. With no income and twenty people living in a two bedroom times were tough.

## THE PAIN CAUSED BY THE STORM

18.     The child Mr. Wright fathered while he was in junior high school was now 14 years old and Mr. Wright and his wife had grown deeply attached to her, but the storm moved her mother to

another state. It was during that time Mr. Wright was informed that the child he raised for 14 years was not his child biologically.

19. Also around this same time Mr. Wright and his wife applied for Red Cross assistance because of the storm. They owned two properties destroyed in the storm and as the registered owners of those properties qualified to receive assistance. However the mother of Mr Wright's prior child and the husband of his daughters mother involved charged for fighting. The mother took Mr Wright's daughter to San Antonio and never returned.

20. Mr. Wright sued the mther for custody and fraud who, in retaliation, wrote letter to the bar they received money from Red Cross illigally.

## IT BAGAIN IN SHAME

21. In 2006 the character and fitness committee open the investigation that took two years to complete on December 20th 2007. Mr Wright's wife had to file a request for permission to sit for the 2006 bar exam. A copy of that request can't be seen below.

> On the **18th day of July, 2006**, the following action was taken by the Supreme Court of Louisian
> **APPLICATION(S) FOR PERMISSION TO TAKE THE BAR EXAM GRANTED WITH ORDER:**
> 2006-OB-1788 IN RE: ERIC W. CLAVILLE
> TRAYLOR, J., would deny the application.
> 2006-OB-1789 IN RE: MICHAEL J. WILLIAMSON
> TRAYLOR, J., would deny the application.
> 2006-OB-1790 IN RE: TROYNEL BOUDY WRIGHT
> TRAYLOR, J., would deny the application.

22. Mr. Wright and then wife was cleared of any wrongdoing about and received conditional admission to the bar.

> 12/07/2007 "See News Release 079 for any Concurrences and/or Dissents."
>
> SUPREME COURT OF LOUISIANA
>
> NO. 06-OB-2395
>
> IN RE: ERIC F. WRIGHT
>
> ON APPLICATION FOR ADMISSION TO THE BAR
>
> PER CURIAM
>
> Petitioner, Eric F. Wright, successfully passed the essay portion of the Louisiana Bar Examination. However, the Committee on Bar Admissions ("Committee") declined to certify him for admission to the Bar based upon character and fitness concerns. On petitioner's application to this court, we appointed a commissioner to take character and fitness evidence and authorized the Office of Disciplinary Counsel ("ODC") to conduct an investigation into petitioner's qualifications to be admitted to the bar.
>
> The commissioner conducted a character and fitness hearing in April 2007, pursuant to Supreme Court Rule XVII, § 9(B). The commissioner received documentary evidence and heard testimony given by petitioner and his witnesses. At the conclusion of the hearing, the commissioner filed his report with this court, recommending that petitioner be conditionally admitted to the practice of law.
>
> After considering the joint agreement of petitioner and the Committee,[1] the evidence, and the law, we conclude petitioner, Eric F. Wright, is eligible to be conditionally admitted to the practice of law in Louisiana, subject to the following conditions:
>
> ---
> [1] The Committee originally filed an objection to the commissioner's recommendation, necessitating the setting of this case on the court's docket for oral argument; however, at oral argument, the Committee singularly withdrew its objection when the Director of Character and Fitness expressed his support for petitioner's admission to the practice of law.

> The Opinions handed down on the **7th day of December, 2007**, are as follows:
>
> **BY CALOGERO, C.J.:**
>
> 2006-C-2191 C/W 2006-C-2204 LOUISIANA STATE EMPLOYEES' RETIRE (MCWILLIAMS)SANDERS
> (Parish of E. Baton Rouge)
> Accordingly, we affirm the portion of the court of appeal judgment finding that reverse the portion of the court of appeal judgment ordering LASERS to refund is remanded to the district court for release to the qualified survivors, Jane and AFFIRMED IN PART, REVERSED IN PART, REMANDED.
>
> CALOGERO, C.J., assigns additional concurring reasons.
> KIMBALL, J., assigns additional concurring reasons.
> JOHNSON, J., dissents and assigns reasons.
> VICTORY, J., dissents in part, concurs in part and assigns reasons.
> KNOLL, J., dissents.
>
> **PER CURIAM:**
>
> 2006-OB-0844 IN RE: JOHN F. CRAWFORD, II
> (Committee on Bar Admissions)
> CONDITIONAL ADMISSION GRANTED.
>
> 2006-OB-2395 IN RE: ERIC F. WRIGHT
> (Committee on Bar Admissions)
> CONDITIONAL ADMISSION GRANTED.

> 1. The term of this conditional admission shall be for two years from the date of admission.
>
> 2. Petitioner shall request that the ODC appoint a practice monitor to supervise his professional activities during the period of this conditional admission. Petitioner shall comply with all reasonable requests of his practice monitor.
>
> 3. Petitioner shall be responsible for ensuring that bi-annual reports of his compliance with this condition are forwarded to the ODC. The reports shall be supported by appropriate documentary evidence.
>
> 4. Within thirty days prior to the expiration of the conditional admission, the ODC shall file a report in this court in which it shall recommend whether the conditional admission be allowed to terminate or be extended.
>
> 5. Petitioner shall cooperate with the ODC, and shall comply with any and all requirements imposed upon him by the ODC.
>
> Should petitioner fail to make a good faith effort to satisfy these conditions, or should he commit any misconduct during the period of probation, his conditional right to practice may be terminated or he may be subjected to other discipline pursuant to the Rules for Lawyer Disciplinary Enforcement.
>
> CONDITIONAL ADMISSION GRANTED.

## DISGRACES HIMSELF

23.     Then the pressure of making money to take care of family started to bear down on Mr. Wright and his thin wife and the two started to take the pain out on each other. Ms. Wright became

permanently discouraged from ever practicing law. Below it's my it's Mr. Wright ext of conditional admission.

> On the **5th day of March, 2010**, the following actions were taken by the Supreme Court
>
> CONDITIONAL ADMISSION EXTENDED: SEE PER CURIAM:
>
> 2006-OB-2395 IN RE: ERIC FITZGERALD WRIGHT, SR.
> KNOLL, J., dissents and would allow petitioner's conditional admission to expire.
>
> 03/05/2010 "See News Release 016 for any Concurrences and/or Dissents."
> SUPREME COURT OF LOUISIANA
> NO 06-OB-2395
> IN RE: ERIC FITZGERALD WRIGHT, SR.
>
> PER CURIAM*
>
> Petitioner, Eric Fitzgerald Wright, Sr., applied to this court after the Committee on Bar Admissions declined to certify him for admission to the bar based on character and fitness concerns. On December 12, 2007, this court admitted petitioner on a conditional basis for a period of two years. *In re: Wright*, 06-2395 (La. 12/7/07), 969 So.2d 1250.
>
> Prior to the expiration of petitioner's two-year conditional admission, the Office of Disciplinary Counsel ("ODC") filed a report with this court outlining two incidents which occurred in 2008 and 2009.[1] After reviewing the ODC's report, we ordered petitioner to show cause why his conditional admission should not be extended for an additional two years. Petitioner submitted a brief in response to that order.
>
> Having reviewed petitioner's brief, we conclude continued monitoring of petitioner is appropriate. Accordingly, we will extend petitioner's conditional admission for an additional two years, commencing from the date of finality of this judgment.
>
> DECREE
>
> It is ordered that the conditional admission of Eric Fitzgerald Wright Sr, be and hereby is extended for an additional two years, commencing from the date of finality
>
> * Chief Justice Kimball not participating in the opinion.
> [1] The 2008 incident involved a charge of domestic violence. The 2009 incident arose from an altercation between petitioner and a client.

### MR. WRIGHT WAS BROKEN

24.     It was difficult for Mr. Wright to accept that is all started behind and anonymous letter Mr. Wright entered a deep depression and quit the practice of law while being invistiged for a fight with a man his wife was cheating with.

> 2011-C -1170    LAURIE JENKINS v. LARRY G. STARNS
>
> ON WRIT OF REVIEW TO THE COURT OF APPEAL FIRST CIRCUIT.
>
> Larry G. Starns;
> For Applicant:
>
> Eric Fitzgerald Wright, Sr.;
> For Respondent.

> On the **26th day of October, 2012**, the following actions were taken by the Supreme Court of Louisiana in the cases listed below:
>
> ADMISSION TO THE LOUISIANA BAR DENIED:
>
> 2012-OB-2096 IN RE: MICHAEL R. CALABRESE
>
> CONDITIONAL ADMISSION PERMANENTLY REVOKED: SEE PER CURIAM:
>
> 2012-B-1681 IN RE: ERIC FITZGERALD WRIGHT, SR.
> JOHNSON, J., agrees with revoking conditional admission, but not permanently.
> WEIMER, J., agrees with revoking conditional admission, but not permanently.

## MR. WRIGHT WAS LOST

25.     On October 26th 2012, Mr Wright's conditional admission to practice law was permanently revoked. During that time Mr. Wright was on the road working for KLLM trying to figure out what he wanted to do with his life. A copy of revocation of conditional admission is below.



## FOUND

26.     In March 2013 Mr. Wright found a new place to call home in New York City. Prior to being hired by the defendants Mr. Wright and his girlfriend had been dating for some time. See

pictures below.



   

 

## NEW EMPLOYMENT

27.  In early 2019-20 the defendant's would moved Mr. Wright into a company house and with bonuses a lot of furniture.

## THE STRUGGLE

28.  The defendants had no idea how NON-inclusive their environment was for black Americans, because they never had a Black African American professional employee in the history

 

of its existence. [2]

**IT WAS MURDER**

29. George Floyd happened and the world was on fire, and then immediately Mr. Wright called was Ms. Kanzukenus it was after hours they spoke

30. Mr. Wright is a Black, African-American Male. Mr. Wright resides, and has at all times relevant here resided, at 1038 Regent Street, Schenectady, NY 12309.

31. Mr. Wright believes he was discriminated against and retaliated against based on basis of a) race, b) national origin/ethnic heritage or c) gender.

32. Mr. Wright faced discriminatorily motivated ias, -- intentional, overt, and implicit, and treated differently than similarly situated non-Black, African Amerian, Males.

33. The charging Party faced unlawful retaliation for asserting protected rights relating to the presence of systematic ra, and overt discrimination and implicit bias existing at MHM.

34. Mr. Wright was hired as a law clerk at MHM on March 25, 2018.

35. MHM terminated Mr. Wright's employment on or about November 18, 2020. Up to the time of his unlawful suspension and termination from employment, Mr. Wright had an exemplary and unblemished employment record with Defendants.

36. Mr. Wright was suspended from employment pending an investigation into allegations made by two Caucasian Female co-workers claiming that a) Mr. Wright made sexually harassing comments to Ms. Kanzukenus Kazukenus, a Caucasian, Female, senior attorney to whom Mr. Wright had formerly reported, and (b) for allegedly "stalking," "harassing," and "intimidating" Karen Wheeler, a Caucasian, Femalparalegalgal during a lunchtime encounter in the Defendants' employee parking lot.

---

[2] From this point forward hundreds of email discussions and text on race are ramdonly included.

37. Mr. Wright was fired for sexual harassment because his behavior "threatened," "intimidated," and made the Caucasian females "uncomfortable." The claims of harassment, intimidation, and threats attributed to Mr. Wright are baseless racially motivated exaggerations, attributed to andert or implicit bias of two Caucasian female employees, and the Defendants' aiding and abetting the andand/or implicit systemic stereotypical bias against Black, African-American, Males.

38. Mr. Wright claims that he faced harsh employment actions due to actual and implicit biased on of his race, national origin, and gender: Defendants quickly blamed him for conduct which objectively could not be considered harassing, intimidating, or threatening, and considered so based on implicit negative stereotypes of Black males by Caucasian females.

39. During his employment with Defendants, he suffered tangible adverse employment actions, including suspension, termination, loss of benefits, and financial distress, because of conscious and implicit bias within MHM. MHM's discriminatory/retaliatory conduct caused and is causing, Mr. Wright to suffer from panic attacks and depression. The hostile work environment at MHM, and his exaggerations, and fabrications of the events resulting in his termination from employment caused and are causing Mr. Wright to suffer from both Major Depression and Generalized Anxiety Disorder.

40. Mr. Wright was targeted because of my race and views on systemic racism and fired because of the same. Had George Floyd, Amy Cooper, or Breonna Taylor not brought racism and white supremacy to the world's attention, Mr. Wright would not be in this predicament.

41. Black American, Mr. Wright is a member of the race who makes white people feel guilty about their privilege of being white. Like Amy Cooper did to the bird watcher Christopher Cooper,

these women weaponized and used whiteness to exaggerate regular contact with a black man. MHM is guilty of not having the system to protect me from whiteness weaponized.

42. Especially after Mr. Wright made them aware of systemic racism. After making MHM aware of systemic racism and its effect on the lives of Black Americans, Mr. Wright became a victim of that very thing by these false allegations.

43. Mr. Wright contends that his freedom of speech was infringed as alleged in paragraph

44. Mr. Wright has exhausted all pre-suit requisites.

45. THUS, Mr. Wright prays that: he be awarded back pay and all lost benefits of employment; damages to compensate Mr. Wright for emotional grief, stress, humiliation, career damage, and resultant physical harm caused by Defendants' unlawful actions; the Court issue an injunction requiring Defendants to re-employ Plaintiff at an equivalent job with all employment rights and benefits to which he would have been entitled but for the adverse actions undertaken against his, and without harassment or illegal condition imposed on his job, or, in the alternative, front pay and benefits rather than reinstatement; that Mr. Wright is awarded pre-and post-judgment interest; that Mr. Wright be awarded attorney fees and costs, litigation expenses, and any other relief that the Court deems proper.

46. At the time of termination in November 2020, Mr. Wright was the only Black, African-American professional member of the firm. That the reasons given by Defendants for his termination were exaggerated and pretextual and intended to shield MHM from liability due to its conscious and implicit bias. Mr. Wright was fired because he is a Black African-American Male and a social justice activist, and the Defendants elected to believe the unsubstantiated implicit bias of two Caucasian staff members rather than conduct a fair and impartial review.

47. The alleged conduct ascribed to Mr. Wright could not be reasonably characterized as "sexual harassment," or "intimidation" under any legal definition of the terms. -3- Defendants did not provide Mr. Wright with any prior warning, reprimand, or counseling that the behavior ascribed to Mr. Wright was unwelcome, or violated the Defendants's sexual harassment and any other workplace rules.

48. There was no reasonable expectation that Mr. Wright's actions would result in adverse employment action especially since similar conduct from non-Black, African American males did not result in suspension, termination from employment, or other disciplinary action.

49. Mr. Wright suffered termination from employment due to his protected status as a Black, African-American Male, and social justice activist whose outspokenness on systemic racism, brought unwanted attention to MHM's senior management and were motivating factors in its decision to terminate his employment.

50. During Mr. Wright's employment with Defendants, Mr. Wright observed conduct that had been ascribed to him that was regularly performed by other nonminority staff with no adverse action imposed or other adverse consequences. Upon belief, no non-African-American, male employees at MHM were disciplined or terminated from employment for a single attire remark or friendly gesture on the same day with co-workers who had no prior negative history but, in fact, end relationship with Mr. Wright.

51. Mr. Wright shows that he always received excellent performance evaluations with MHM, that is, until his social justice activism pursuit of racial tolerance.

52. Mr. Wright was fired due to stereotypical conscious and implicit bias against Black, African-American, Males, and the Defendants' embarrassment by Mr. Wright's social justice

advocacy. If Mr. Wright were Caucasian or female, he would not have been fired or suffered tangible adverse employment actions.

53.  If Mr. Wright were Caucasian or female, or, if the female employees were Black, African-American, Females, and he were Caucasian Male or Black, or African American Male, Mr. Wright would not have been fired or suffered tangible adverse employment actions. MHM's termination of Mr. Wright's employment lacked reasonable cause and was imposed because of unlawful discrimination and retaliation.

## DEMAND FOR JURY TRIAL

54.  Mr. Wright demands a trial by jury for all matters so triable.

Dated: May 17, 2022

Respectfully submitted,

## PRAYER FOR RELIEF

THUS, the plaintiff requests that this Court grant the following relief:

Mr. Wright declare under penalty of perjury that the foregoing is true and correct.